IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN CARROLL, and DAWN CARROLL**, | : <br> : <br> : |
| *Plaintiffs,* | : Case No. <br> : <br> : |
| v. | : <br> : |
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION,** | : <br> : <br> : <br> : **COMPLAINT – CIVIL ACTION** |
| and | : <br> : |
| **ABC CORPORATION 1-4, Fictitious Names** | : <br> : <br> : |
| *Defendants* | : |

## NATURE OF THE ACTION

1. On February 20, 2020, Plaintiffs John and Dawn Carroll ("Plaintiffs") were involved in a single-vehicle collision on Interstate 81 south of Carlyle, Pennsylvania. During the collision, Plaintiffs' vehicle veered too far into the left-hand shoulder of the interstate highway and struck the "end terminal" of a guardrail system that was just beginning along that section of the highway.

2. When a vehicle is involved in a head-on or angled collision with an "end terminal," a properly installed and maintained guardrail system is intended to absorb the energy of the vehicle by bending and "gating" out of the way of the vehicle to allow the vehicle to decelerate and ultimately stop in as safe a manner as possible.

1

3. In the instant case, due to Defendants' improper installation, inspection, and/or maintenance of the guardrail system in question ("Subject Guardrail"), the guardrail did not react to the collision with Plaintiffs' vehicle as anticipated or designed. Instead, the guardrail speared through the entire interior compartment of Plaintiffs' vehicle and seriously injured Plaintiff John Carroll.

4. Defendants were negligent and/or reckless in their failure to reasonably install, inspect, and/or maintain the Subject Guardrail, which compromised the efficacy of the guardrail system and increased the likelihood of injury from a crash with the Subject Guardrail,

5. The compromised condition of the Subject Guardrail directly led to the guardrail and end terminal penetrating Plaintiffs' vehicle and spearing through it.

6. Defendants knew, or should have known, that disregarding safety and quality assurance in the installation and maintenance of the Subject Guardrail presented a substantial risk of serious injury or death.

7. Despite this knowledge, Defendants ignored and/or chose to bypass safety measures and quality assurance protocols and standards for ensuring the integrity of the Subject Guardrail through proper inspections and maintenance.

8. Defendants acted with reckless disregard for the safety of Plaintiff John Carroll and other drivers on the road.

9. Defendants' negligent and/or reckless actions and omissions were the direct and proximate cause of Plaintiff John Carroll's injuries.

## PARTIES

10. Plaintiffs John and Dawn Carroll, husband and wife, are adult individuals, residents, and citizens of the State of Georgia, residing at 2056 Ivylog Drive, Blairsville, GA 30512 at all times relevant hereto.

11. Defendant Commonwealth of Pennsylvania, Department of Transportation (hereinafter "PennDOT") is a Commonwealth Agency with its principal place of business located at 521 Transportation & Safety Building, Harrisburg, Dauphin County, Pennsylvania 17120.

12. Defendants ABC Corporation 1-4 (hereinafter "ABC"), fictitious names, were, at all times material hereto, professional corporations or other entities and the employers of individuals involved in the installation, assembly, erection, and maintenance of the subject guardrail and end terminal, which were located at or near Milepost 37 on I-81 Northbound in the center median of the highway (hereinafter "Subject Guardrail").

13. The claims asserted against Defendants ABC are for direct corporate negligence and for the negligence of their employees, agents, ostensible agents, and servants as stated more fully herein, namely, individuals involved in the installation, assembly, erection and maintenance of the Subject Guardrail, which failed on February 20, 2020. Plaintiffs have conducted a reasonable search to identify Defendants ABC but have yet to determine their exact identity.

## JURISDICTION AND VENUE

14. Jurisdiction is based on 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

15. The events, acts and omissions that give rise to Plaintiffs' claims and form the subject matter of this action occurred in Penn Township, Cumberland County, Pennsylvania.

16. Venue is proper in the Middle District of Pennsylvania because a substantial part of the events, acts and omissions that give rise to Plaintiffs' claims and form the subject matter of this action occurred in this judicial district.

## FACTUAL ALLEGATIONS: DAY OF THE ACCIDENT

17. On February 20, 2020, at approximately 10:30 a.m., Plaintiff John Carroll was the owner and operator of 2018 Chrysler 300, license plate CIJ9063, (hereinafter "Plaintiffs' vehicle) traveling in a northern direction on Interstate 81 at or near Exit 37 for Newville, Cumberland County, Pennsylvania. Plaintiff was not exiting the highway at Newville, but rather, was continuing straight on I-81 N towards Carlisle, Pennsylvania.

18. At that same time and location, Plaintiff Dawn Carroll was a restrained front passenger in Plaintiffs' vehicle that was being driven by her husband, John Carroll.

19. At that location, Interstate 81 is a four lane, two-way, paved highway, with two lanes for each direction of traffic, and with a large grass-covered median

separating the lanes of traffic.

20. The posted speed limit was 65 mph, and Plaintiff John Carroll was traveling at or about that posted speed limit on that date and time at that location.

21. At the above-described time, date and location, Plaintiff John Carroll became distracted and/or otherwise lost focus on the road and lost control of his vehicle thereby entering the left-hand shoulder of the highway and ultimately steering the driver's side of the vehicle into an impact with the end terminal of the adjacent guardrail.

22. The Subject Guardrail speared through the driver's side front quarter panel, into the driver's side front passenger compartment area of the vehicle, through the rear passenger compartment area of the vehicle, and into to the trunk of the vehicle. While passing through the front passenger compartment, the guardrail sliced through Plaintiff John Carroll's left lower limb causing serious personal injuries to Plaintiff, as described more fully below.

23. The injuries sustained by Plaintiff John Carroll would not have occurred but for the Subject Guardrail spearing the Plaintiffs' vehicle.

### **FACTUAL ALLEGATIONS: DEFENDANTS' CONDUCT**

24. Upon information and belief, at the time of Plaintiffs' accident the Subject Guardrail was an SRT-350 Guardrail manufactured by Trinity Highway Products.

25. Upon information and belief, this SRT guardrail system was not installed properly and/or was not maintained properly, increasing the risk of

spearing upon a head-on collision.

26. Upon information and belief, the Subject Guardrail was installed, inspected, and maintained by, or at the direction of, Defendant PennDOT.

27. Upon information and belief, Defendants ABC were independent contractors hired by Defendant PennDOT to install, inspect, and maintain the Subject Guardrail.

28. As independent contractors, Defendants ABC do not constitute "employees" as defined by 42 Pa.C.S.A. §8501. Indeed, Defendant PennDOT did not have any legal right of control over Defendants ABC, their employees, agents, and/or other personal performing tasks for Defendants ABC.

29. Upon information and belief, the Subject Guardrail was in a state of disrepair prior to the Plaintiffs' accident. The Subject Guardrail was either not installed properly or not properly maintained to ensure that "the bottom of the top hole [of the breakaway holes] located approximately at the finished grade," as required by Trinity's installation manual.

30. As shown *infra*, the breakaway hole on each of the wooden posts was several inches above finished grade. The inset picture is an exploded view of the one of the post holes, which was installed considerably higher than required by the installation manual.



31.     The Subject Guardrail manufacturer's assembly instructions specify the correct height of the breakaway holes for this model of guardrail and end terminal system.  A model installation photo is shown below and demonstrates what the assembly should look like when the breakaway holes of the wooden posts are at the proper height.  The inset picture shows the bottom of the holes near the groundline such that loose gravel around the holes makes the holes barely visible.



32. Upon information and belief, prior to February 20, 2020, the Subject Guardrail had been impacted by another vehicle and sustained visible damage that would have compromised its integrity and also required its repair and/or replacement.

33. The Defendants' negligent and reckless acts consisted, *inter alia,* of the following:

    a. Improperly installing the Subject Guardrail and guardrail system;

    b. Failing to inspect the Subject Guardrail for proper installation;

    c. Failing to inspect the Subject Guardrail with reasonable frequency to ensure that the guardrail was in proper working condition;

    d. Failing to repair and/or replace the guardrail prior to February 20, 2020, due to damage;

    e. Failing to inspect and/or maintain the Subject Guardrail to ensure that the wooden poles and their breakaway holes remained at the proper height;

    f. Failing to inspect and/or maintain the property around the Subject Guardrail to ensure that erosion of the ground did not create a dangerous condition;

    g. Installing the Subject Guardrail in a location where it was contraindicated, within a zone that should have been traversable, free of obstructions, and available for safe recovery of an errant vehicle, thereby inserting a fixed object within what should have

been "forgiving roadside" or a "clear zone;"

h.   Failing to toe nail the blockouts to the posts, thereby allowing the blockouts to rotate. Blockouts are required to be toe nailed to the posts in Trinity's installation manual and required to be confirmed on the installation checklist.

## **DEFENDANT PENNDOT'S NOTICE OF CLAIM**

34.   Defendant PennDOT had actual and/or constructive notice of this claim pursuant to 42 Pa.C.S.A. §5522(a)(3)(iii) given that Defendant PennDOT sent Plaintiff a letter and invoice, dated May 11, 2020, for the damage to the guardrail caused by the accident of February 20, 2020. A copy of said letter is attached hereto as **Exhibit 1**.

35.   In that letter of May 11, 2020, Defendant PennDOT acknowledges having received a copy of the police/accident report from February 20, 2020, which details the accident and the fact that Plaintiff was injured. A copy of the police report is attached hereto as **Exhibit 2**. Moreover, that police report specifically mentions that the reporting officer had "notified PennDOT".

36.   Furthermore, insofar as Defendants would raise any defense that Plaintiff failed to comply with the notice requirement of 42 Pa.C.S.A. §5522, any such alleged failure should be excused because Plaintiff (a) is and was at all times relevant a Georgia resident without any knowledge of the notice requirement, (b) was physically incapacitated and home-ridden for over 14 months following the accident, and (c) was delayed significantly in contacting and speaking with an

9

attorney regarding his claim due to the ongoing COVID-19 pandemic that caused law offices to be closed and investigations to be unavoidably delayed.

37. Accordingly, any alleged failure of Plaintiffs to comply with the notice requirement of 42 Pa.C.S.A. §5522 should be excused.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE
### PLAINTIFF JOHN CARROLL v. ALL DEFENDANTS

38. Plaintiffs incorporate by reference all allegations contained in all paragraphs above as if fully restated herein.

39. The Subject Guardrail and its component parts, including the end terminal, were owned and/or were the property of PennDOT and were assembled and/or maintained and/or possessed and/or controlled by Defendants.

40. At all times relevant hereto, Defendants, owed a duty of care to Plaintiffs and all other drivers on Pennsylvania highways to assemble, install, maintain, and inspect the Subject Guardrail and its component parts, including the end terminal, in a lawful and safe manner.

41. As the direct result of the above-described negligent and reckless actions and/or inactions of Defendants, and the resultant spearing of Plaintiffs' vehicle and Plaintiff, he suffered the following injuries, none of which he would have suffered in the absence of the improperly installed and/or maintained guardrail system:

    a. Fractures through the lateral base of the 1st metatarsal;

    b. Proximal metaphysis of the 2nd and 3rd metatarsals;

    c. Fractures through the base of the proximal phalax of the 5th toe;

    d. Fractures through the neck of the proximal phalanges of the 3rd, 4th, and 5th toes;

    e. Grade 3 open dislocation of the Lisfranc joint;

    f. Non-displaced fracture of the middle phalanx of the 5th toe;

    g. Fracture of the tibia;

    h. Grade three incision of the left foot;

    i. Disfigurement, deformity, and scarring of the left foot;

    j. Numbness and loss of feeling in multiple toes of the left foot;

    k. Chronic pain syndrome and swelling;

    l. Other injuries the extent of which have yet to be determined.

42. As the direct result of the above-described negligent and reckless actions and/or inactions of Defendants and the resultant spearing of Plaintiffs' vehicle and Plaintiff, Plaintiff John Carroll sustained the following damages:

    a. Past and future medical expenses;

    b. past lost earnings and future lost earnings and earning capacity;

    c. past and future physical pain, mental anguish, discomfort, depression, and/or emotional distress;

    d. past and future embarrassment and humiliation;

    e. past and future loss of ability to enjoy the pleasures of life; and,

    f. permanent disfigurement.

43. As the direct result of the above-described negligent and reckless actions and/or inactions of Defendants and the resultant spearing of Plaintiffs'

vehicle and Plaintiff, Plaintiff John Carroll has been and may in the future be hindered and/or prevented from attending to and/or fully performing his usual and customary duties, hobbies and/or avocations, to his ongoing detriment and loss.

44. As the direct result of the above-described negligent actions and/or inactions of Defendants and the resultant spearing of Plaintiffs' vehicle and Plaintiff, Plaintiff John Carroll has been and/or in the future may be required to spend money for household help, to his ongoing detriment and financial loss.

**WHEREFORE**, Plaintiffs demand judgment in an amount in excess of $75,000 limits against all Defendants, jointly and severally, exclusive of attorney's fees, costs of suit, punitive damages, and all other damages deemed appropriate by this Court.

## COUNT II – VICARIOUS LIABILITY
## PLAINTIFF JOHN CARROLL v. PENNDOT

45. Plaintiffs incorporate by reference all allegations contained in all paragraphs above as if fully restated herein.

46. To the extent that Defendant PennDOT did not contract with Defendants ABC to install, inspect, and/or maintain the Subject Guardrail, then all of the negligent and reckless acts complained of *supra* were performed by employees of PennDOT, who were working within the scope of their employment for PennDOT, and for the benefit of PennDOT, at the time of the negligent acts. Defendant PennDOT is vicariously liable for all of the negligent acts herein complained of.

47. To the extent that Defendant PennDOT did contract with Defendants ABC to install, inspect, and/or maintain the Subject Guardrail, AND Defendants

ABC was in fact an employer of Defendants ABC with legal right of control over Defendants ABC, then Defendant PennDOT is vicariously liable for the negligent and reckless acts of Defendants ABC.

48. As the direct result of the above-described negligent and reckless actions and/or inactions of Defendants, and the resultant spearing of Plaintiffs' vehicle and Plaintiff, he suffered the following injuries, none of which he would have suffered in the absence of the improperly installed and/or maintained guardrail system:

    a. Fractures through the lateral base of the 1st metatarsal;

    b. Proximal metaphysis of the 2nd and 3rd metatarsals;

    c. Fractures through the base of the proximal phalax of the 5th toe;

    d. Fractures through the neck of the proximal phalanges of the 3rd, 4th, and 5th toes;

    e. Grade 3 open dislocation of the Lisfranc joint;

    f. Non-displaced fracture of the middle phalanx of the 5th toe;

    g. Grade three incision of the left foot;

    h. Numbness and loss of feeling in multiple toes of the left foot;

49. As the direct result of the above-described negligent and reckless actions and/or inactions of Defendants and the resultant spearing of Plaintiffs' vehicle and Plaintiff, Plaintiff John Carroll sustained the following damages:

    a. Past and future medical expenses;

    b. past lost earnings and future lost earnings and earning capacity;

    c.    past and future physical pain, mental anguish, discomfort, depression, and/or emotional distress;

    d.    past and future embarrassment and humiliation;

    e.    past and future loss of ability to enjoy the pleasures of life; and, permanent disfigurement.

50. As the direct result of the above-described negligent and reckless actions and/or inactions of Defendants and the resultant spearing of Plaintiffs' vehicle and Plaintiff, Plaintiff John Carroll has been and may in the future be hindered and/or prevented from attending to and/or fully performing his usual and customary duties, hobbies and/or avocations, to his ongoing detriment and loss.

51. As the direct result of the above-described negligent actions and/or inactions of Defendants and the resultant spearing of Plaintiffs' vehicle and Plaintiff, Plaintiff John Carroll has been and/or in the future may be required to spend money for household help, to his ongoing detriment and financial loss.

**WHEREFORE**, Plaintiffs demand judgment in an amount in excess of $75,000 limits against Defendant PennDOT, exclusive of attorney's fees, costs of suit, punitive damages, and all other damages deemed appropriate by this Court.

**COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**PLAINTIFF DAWN CARROLL v. ALL DEFENDANTS**

52. Plaintiffs incorporate by reference all allegations contained in all paragraphs above as if fully set restated herein.

53. At all times relevant hereto, Plaintiff Dawn Carroll was closely related to John Carroll.

54. On February 20, 2020, Plaintiff Dawn Carroll was at the scene of the motor vehicle accident wherein Plaintiff John Carroll's lower left limb was severed, and she directly witnessed the aftermath of the crash including her husband's injuries.

55. Plaintiff Dawn Carroll suffered severe shock and/or distress resulting from a direct emotional impact caused by the sensory or contemporaneous observance of the accident and her husband's physical injuries.

**WHEREFORE**, Plaintiffs demand judgment in an amount in excess of $75,000 limits against Defendants, jointly and severally, exclusive of attorney's fees, costs of suit, punitive damages, and all other damages deemed appropriate by this Court.

### COUNT IV – LOSS OF CONSORTIUM
### PLAINTIFF DAWN CARROLL v. ALL DEFENDANTS

56. Plaintiffs incorporate by reference all allegations contained in all paragraphs above as if fully restated herein.

57. As a direct result of the above described negligent and reckless actions and/or inactions of Defendant and the resultant spearing of Plaintiffs' vehicle, Plaintiff Dawn Carrol has suffered the past and future loss of her spouse's services, companionship, company, society, cooperation, affection, assistance and aid in the marital relationship, including disruption of the ability to engage in sexual relations.

**WHEREFORE**, Plaintiffs demand judgment in an amount in excess of $75,000 limits against Defendants, jointly and severally, exclusive of attorney's fees,

costs of suit, punitive damages, and all other damages deemed appropriate by this Court.

DATED:  February 17, 2022

                                        Respectfully Submitted,

                                        */s/ T. Matthew Leckman*
                                        T. Matthew Leckman, Esq. (PA ID # 92241)
                                        LECKMAN LAW, LLC
                                        319 Bainbridge Street, 3rd Floor
                                        Philadelphia, PA 19147
                                        T: (215) 635-0584
                                        matt@leckmanlaw.com

                                        Andrew J. Sciolla, Esq. (PA ID # 203445)
                                        SCIOLLA LAW FIRM, LLC
                                        100 S. Broad Street, Ste. 1910
                                        Philadelphia, PA 19110
                                        T: (267) 328-5245
                                        F: (215) 972-1545
                                        andrew@sciollalawfirm.com