## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CARROLL and | : | |
| DAWN CARROLL, | : | |
|     **Plaintiffs** | : | **No. 1:22-cv-00242** |
| | : | |
|     **v.** | : | **(Judge Kane)** |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPARTMENT | : | |
| OF TRANSPORTATION, VALLEY | : | |
| QUARRIES, INC., and NEW | : | |
| ENTERPRISE STONE & LIME CO., | : | |
| INC., | : | |
|     **Defendants** | : | |

## <u>MEMORANDUM</u>

This case arises from Plaintiffs John Carroll and Dawn Carroll ("Plaintiffs")' single-vehicle collision with a guiderail system on Interstate 81, an area of highway maintained by Defendant Commonwealth of Pennsylvania, Department of Transportation ("PennDOT"). (Doc. Nos. 1, 12, 23.) During discovery, Plaintiffs learned that Defendants Valley Quarries, Inc. and New Enterprise Stone & Lime Co., Inc. ("Valley Quarries <u>et al.</u>")[1] had installed the guiderail, and Valley Quarries <u>et al.</u> were added as Defendants in Plaintiffs' operative Second Amended Complaint. (Doc. No. 23.)

Before the Court are motions for summary judgment filed by Defendants Valley Quarries <u>et al.</u> (Doc. No. 49) and Defendant PennDOT (Doc. No. 58). For the reasons that follow, the

---

[1] Valley Quarries, Inc. is a fictitious name owned by New Enterprise Stone & Lime Co., Inc. Valley Quarries, Inc. was merged into New Enterprise Stone & Lime Co., Inc., effective August 5, 2010. (Doc. No. 50 at 1 n.1.) In their answer to Plaintiffs' complaint, Valley Quarries, Inc. and New Enterprise Stone & Lime Co., Inc. refer to themselves as a singular Defendant. Plaintiffs refer to them as Defendants. The Court refers to Valley Quarries, Inc. and New Enterprise Stone & Lime Co., Inc. in the plural tense because they are two of the named Defendants in the operative Second Amended Complaint. <u>See</u> (Doc. No. 23.)

Court will grant Defendants Valley Quarries et al.'s motion for summary judgment (Doc. No. 49) and will largely deny Defendant PennDOT's motion for summary judgment (Doc. No. 58) without prejudice but grant, in part, Defendant PennDOT's motion as to Count II of Plaintiffs' Second Amended Complaint.

## I.    BACKGROUND

### A.    Factual Background[2]

On February 20, 2020, Plaintiffs were involved in a single-vehicle collision on Interstate 81 near Carlisle, Pennsylvania when Plaintiffs' vehicle veered into the lefthand shoulder of the highway and struck the "end terminal" of a guide rail system ("Subject Guiderail"). (Doc. Nos. 51 ¶ 1; 55 ¶ 1; 60 ¶¶ 1, 3; 65 ¶¶ 1, 3.) A part of the guiderail entered Plaintiffs' vehicle and injured Plaintiff John Carroll's left foot. (Doc. Nos. 60 ¶ 4; 65 ¶ 4.) The parties dispute the extent of Plaintiff John Carroll's injuries—Plaintiffs claim that the Plaintiff John Carroll's leg is severely and permanently injured.[3] (Doc. No. 65 ¶ 4.)

---

[2]   The following relevant facts of record are taken from Valley Quarries et al.'s Statement of Material Facts (Doc. No. 51), Plaintiffs' Response to Valley Quarries et al.'s Statement of Material Facts (Doc. No. 55), PennDOT's Statement of Material Facts (Doc. No. 60), and Plaintiffs' Response to PennDOT's Statement of Material Facts (Doc. No. 65), and are undisputed unless otherwise noted. Both statements of facts and responses thereto contain specific citations to the record at each numbered paragraph.

[3]   As discussed infra, causation and damages are not contested by PennDOT's motion for summary judgment. (Doc. No. 59 at 16–17.) Valley Quarries et al. similarly make no argument concerning causation and damages. However, to provide a complete picture of the accident that is the center of this dispute, the Court notes that Plaintiffs' Second Amended Complaint alleges the following injuries to Plaintiff John Carroll:

> a. Fractures through the lateral base of the 1st metatarsal;
> b. Proximal metaphysis of the 2nd and 3rd metatarsals;
> c. Fractures through the base of the proximal phalanx of the 5th toe;
> d. Fractures through the neck of the proximal phalanges of the 3rd, 4th, and 5th toes;
> e. Grade 3 open dislocation of the Lisfranc joint;

### 1.      Installation of the Subject Guiderail

The Subject Guiderail was installed during a PennDOT construction project that began in August 1998 and was completed in October 1999 ("1998 Highway Improvement Project"). (Doc. Nos. 60 ¶¶ 5–6, 12; 65 ¶¶ 5–6, 12.)  Valley Quarries et al., hired by PennDOT, installed the guiderail.  (Doc. Nos. 51 ¶ 5; 55 ¶ 5; 60 ¶ 16; 65 ¶ 16.)  The Subject Guiderail was manufactured by Trinity SRT-350 (which is now known as Valtir), and drawings and specifications for the 1998 Highway Improvement Project indicate that an "SRT-350 Slotted Rail Terminal" was installed.  (Doc. Nos. 60 ¶ 5; 65 ¶ 5.)  The purpose of a guiderail is to prevent a motorist from striking an object that would be more detrimental than hitting the guiderail itself. (Doc. Nos. 60 ¶¶ 7–8; 65 ¶¶ 7–8.)   The Subject Guiderail was installed near a bridge in order to protect motorists approaching the bridge.  (Doc. Nos. 60 ¶ 9; 65 ¶ 9.)  The Trinity SRT-350 Assembly Manual (Doc. No. 59-7) describes that when installing the wood posts, backfill should be added so that the bottom of the top breakaway hole is approximately at finished grade.  (Doc. Nos. 60 ¶ 35; 65 ¶ 35.)

### 2.      Post-Installation of the Subject Guiderail

PennDOT was responsible for all maintenance of the Subject Guiderail following installation.  (Doc. Nos. 60 ¶ 19; 65 ¶ 19.)  PennDOT inspectors utilize PennDOT's roadway construction standards—regulations drafted in coordination with federal highway partners. (Doc. Nos. 60 ¶ 13; 65 ¶ 13.)  In 2017, PennDOT employees and inspectors were present when a

---

f. Non-displaced fracture of the middle phalanx of the 5th toe;
g. Grade three incision of the left foot;
h. Numbness and loss of feeling in multiple toes of the left foot; and
i. Chronic pain syndrome and swelling.

(Doc. No. 23 ¶ 52.)

cable barrier system was installed a few feet away from the breakaway support posts of the Subject Guiderail.  (Doc. Nos. 60 ¶ 29; 65 ¶ 29.)  There is no evidence to suggest that the cable barrier installation disrupted the area around the Subject Guiderail.  (Doc. Nos. 60 ¶ 30; 65 ¶ 30.)  Then, between 2019 and 2022, PennDOT completed a paving preservation project ("2019–2022 Paving Project") near and around the Subject Guiderail, in which the road was resurfaced and some guiderails were updated to comply with federal standards.  (Doc. Nos. 60 ¶¶ 31–33; 65 ¶¶ 31–33.)

### B.    Procedural Background

On February 18, 2022, Plaintiffs initiated this action by filing a complaint against PennDOT and other unnamed Defendants.  (Doc. No. 1.)  On April 28, 2022, Plaintiffs filed their First Amended Complaint alleging state law claims of negligence, vicarious liability, negligent infliction of emotional distress, and loss of consortium.  (Doc. No. 12.)  After engaging in discovery with PennDOT, Plaintiff discovered that Valley Quarries et al. were the contractors who installed the Subject Guiderail.[4]  Thereafter, Plaintiffs filed their Second Amended Complaint against all above-named Defendants on October 18, 2022, alleging the following claims: negligence against all Defendants (Count I); vicarious liability against PennDOT for Valley Quarries et al.'s alleged negligence (Count II); negligent infliction of emotional distress against all Defendants (Count III); and loss of consortium against all Defendants (Count IV).  (Doc. No. 23.)

---

[4]   Upon receiving Rule 26 Disclosures from PennDOT, Plaintiffs discovered that the last guiderail update had been in 1998.  (Doc. No. 51-4.)  PennDOT then produced construction drawings from its 1998 Highway Improvement Project and identified Valley Quarries et al. as the contractors.  (Doc. Nos. 50 at 6; 51-1.)  No party disputes that Valley Quarries et al. are listed as the contractors of the project where the Subject Guiderail was installed.  (Doc. Nos. 51 ¶ 5; 55 ¶ 5; 60 ¶ 16; 65 ¶ 16.)

After an additional period of discovery, Valley Quarries et al. filed a motion for summary judgment on September 14, 2023.  (Doc. No. 49.)  Valley Quarries et al. filed a brief in support of their motion for summary judgment (Doc. No. 50) and a statement of material facts with attached exhibits (Doc. Nos. 51, 51-1 through 51-5).  Plaintiffs filed a brief in opposition to Valley Quarries et al.'s motion with attached exhibits (Doc. Nos. 56, 56-1 through 56-15) along with their answer to Valley Quarries et al.'s statement of material facts (Doc. No. 55).  Valley Quarries et al. filed a reply brief.  (Doc. No. 61.)  With a supporting brief, exhibits, and a statement of facts, PennDOT filed its own motion for summary judgment on October 20, 2023. (Doc. Nos. 58, 59, 59-1 through 59-7, 60.)  Plaintiffs filed a brief in opposition to PennDOT's motion, an answer to PennDOT's statement of facts, and exhibits.  (Doc. Nos. 62, 62-1 through 62-21, 63.)  PennDOT did not file a reply to Plaintiffs' brief in opposition, and the time for doing so has elapsed.  The two motions for summary judgment are now ripe for disposition.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  See id. at 251–52.  In making this determination, the Court must

"consider all evidence in the light most favorable to the party opposing the motion."  See A.W.
v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an
absence of a genuine issue of material fact.  See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364
F.3d 135, 145–46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of
evidence to support the non-moving party's claims, "the non-moving party must rebut the motion
with facts in the record and cannot rest solely on assertions made in the pleadings, legal
memoranda, or oral argument."  See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d
Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party
"fails to make a showing sufficient to establish the existence of an element essential to that
party's case, and on which that party will bear the burden at trial," summary judgment is
warranted.  See Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the
non-moving party must provide, a court should grant a motion for summary judgment when the
non-movant's evidence is merely colorable, conclusory, or speculative.  See Anderson, 477 U.S.
at 249–50.  There must be more than a scintilla of evidence supporting the non-moving party and
more than some metaphysical doubt as to the material facts.  See id. at 252.

### III.    DISCUSSION[5]

As noted <u>supra</u>, Valley Quarries et al. and PennDOT separately move for summary judgment as to Plaintiffs' claims against them.  (Doc. Nos. 49, 58.)  The Court will first discuss Valley Quarries et al.'s motion for summary judgment which concerns Count I (negligence), Count III (negligent infliction of emotional distress), and Count IV (loss of consortium).  The Court will then discuss PennDOT's motion for summary judgment which concerns all counts alleged in Plaintiffs' Second Amended Complaint—negligence (Count I); vicarious liability against PennDOT (Count II); negligent infliction of emotional distress (Count III); and loss of consortium (Count IV).

### A.    Defendants Valley Quarries et al.'s Motion for Summary Judgment

Defendants Valley Quarries et al.'s motion for summary judgment argues that Plaintiffs' claims of negligence (Count I), negligent infliction of emotional distress (Count III), and loss of consortium (Count IV) are barred by the applicable statute of repose.  The Court will discuss the applicable legal standard and the arguments of the parties before analyzing the applicability of the statute of repose to the instant matter.

---

[5]  As noted supra, Plaintiffs were involved in a single-vehicle collision on Interstate 81 near Carlisle, Pennsylvania.  Plaintiffs are residents of the state of Georgia and PennDOT has its principal place of business in the Commonwealth of Pennsylvania.  (Doc. No. 23 ¶¶ 10–11.) When sitting in diversity, a district court applies the choice of law rules of the forum state.  See Pac. Emps. Ins. v. Global Reinsurance Corp., 693 F.3d 417, 432 (3d Cir. 2012); Klaxon Co. v. Stentor Co., 313 U.S. 487, 489 (1940).  In Pennsylvania, the presumption in personal injury cases is to apply the law where the incident occurred unless another state has a more significant relationship to the occurrence and the parties.  See Marks v. Redner's Warehouse Mkts., 136 A.3d 984, 988 (Pa. Super. Ct. 2016).  No state other than Pennsylvania has a significant relationship to the accident.  Plaintiffs and Valley Quarries et al. agree that Pennsylvania law should be applied to the claims of the present action. (Doc. Nos. 50 at 10; 56 at 12.)  PennDOT does not expressly admit that Pennsylvania law should apply; however, PennDOT cites to Pennsylvania case law and standards in its summary judgment briefing.  See generally (Doc. No. 59).

### 1.      Legal Standard

A statute of repose begins to run once a defendant has acted—even if the "period ends before the plaintiff has suffered a resulting injury."  See Graver v. Foster Wheeler Corp., 96 A.3d 383, 386 (Pa. Super. Ct. 2014) (internal quotations omitted).  "Put simply, statutes of repose begin to run upon the completion of certain conduct by a defendant."  Id.  A statute of repose does not merely bar a party's right to a remedy like a statute of limitations, but instead it completely abolishes and eliminates the cause of action.  See Noll by Noll v. Harrisburg Area YMCA, 643 A.2d 81, 84 (Pa. 1994).  A defendant has the burden of proving that a statute of repose precludes liability.  See id.  Pennsylvania's applicable statute of repose provides:

> [A] civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:
>
> (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
>
> * * * *
>
> (3) Injury to the person or for wrongful death arising out of any such deficiency.

See 42 Pa. C.S.A. § 5536(a) ("Statute of Repose").  In other words, the party seeking protection under the Statute of Repose must demonstrate that: (1) it is an improvement to real property; (2) more than twelve (12) years have elapsed between the completion of the improvements to the real estate and the injury; and (3) the activity of the moving party must be within the class protected by the statute.  See McConnaughey v. Bldg. Components, Inc., 637 A.2d 1331, 1333 (Pa. 1994).  The Statute of Repose contains an exception providing that:

> [t]he limitation prescribed by [42 Pa. C.S.A. § 5536](a) shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant or

otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or wrongful death for which it is proposed to commence an action or proceeding.

See 42 Pa. C.S.A. § 5536(b)(2).  Highways are real property and guiderails fall within "improvements to real property."  See Keeler v. Commonwealth, Dept. of Transp., 424 A.2d 614, 616 (Pa. Commw. Ct. 1981) (stating that it is a "fundamental principle of law" that highways are real property and that guiderails by the nature of their physical and permanent attachment to the highway fall within the term "improvements to real property").

## 2. Arguments of the Parties

Defendants Valley Quarries et al. argue that, because more than twelve (12) years have passed between the installation of the Subject Guiderail and Plaintiff John Carroll's injuries, Plaintiffs' claims are barred by the Statute of Repose.  (Doc. No. 50 at 11.)  Valley Quarries et al. address the three requirements for applicability of the Statute of Repose in turn.  (Id. at 11–15.)  First, Valley Quarries et al. assert that the Subject Guiderail is an improvement to real property, citing to Cagey v. Commonwealth, Department of Transportation, 179 A.3d 458, 464 (Pa. 2018), wherein the Pennsylvania Supreme Court found that—because guiderails are permanently installed along the highway and are physically attached to the land—guiderails constitute fixtures upon the land.  (Doc. No. 50 at 12.)  Second, Valley Quarries et al. state that it is clear that more than twelve (12) years have passed between the completion of the Subject Guiderail and Plaintiffs' accident,[6] and that the twelve (12) year period begins once the entire project is completed and can be used by the general public.  See (id. at 13) (citing Noll by Noll, 643 A.2d

---

[6]  All parties agree that the Subject Guiderail was erected in 1998 and completed in 1999.  (Doc. Nos. 51 ¶ 7; 55 ¶ 7; 60 ¶ 6; 65 ¶ 6; 1-1; 51-2 at 1.)  The vehicle crash occurred on February 20, 2020.  (Doc. Nos. 51 ¶ 1; 55 ¶ 1; 60 ¶ 2; 65 ¶ 2.)

at 84).  Third and finally, Valley Quarries et al. maintain that, as contractors, they are protected

as "persons involved in the design, planning, supervision, construction, or observation of the

construction of an improvement to real property itself."  See (Doc. No. 50 at 13) (citing

McConnaughey, 637 A.2d at 1334).  Valley Quarries et al. maintain that they furnished

construction of the Subject Guiderail by installing it, arguing that "[t]hese actions [during

installation] are not similar to manufacturing, but rather, constitute acts of individual expertise

akin to those commonly thought to be performed by builders."  (Doc. No. 50 at 14.)  Therefore,

Valley Quarries et al. posit that Plaintiffs' claims are barred by the Statute of Repose.  (Doc. No.

50 at 14.)  In response to Plaintiffs' claim of negligence (Count I) in the inspection and

maintenance of the Subject Guiderail, Valley Quarries et al. note that the scope of their

responsibility extends only to construction—not to continued maintenance and inspection.  (Id. at

14–15.)

Plaintiffs agree with Valley Quarries et al. that guiderails are considered to be an

improvement to real property and therefore satisfy the first element of the Statute of Repose.  See

(Doc. No. 56 at 13) (citing Keeler, 424 A.2d at 616).  However, Plaintiffs maintain that the

improvement must also be 'lawful' as the Statute of Repose applies to a "civil action or

proceeding brought against any person lawfully performing or furnishing the design . . . ."[7]  See

(Doc. No. 56 at 13).  Plaintiffs posit that the term "lawfully" could mean "compliant with (1) all

local and state ordinances, regulations, and statutes; or (2) all prerequisites necessary to obtain

municipal permission to engage in various activities mentioned in the statute."  See (id.) (citing

Calabretta v. Guidi Homes, Inc., 241 A.3d 436, 439 (Pa. Super. Ct. 2020)).  On this basis,

Plaintiffs maintain that there is a genuine dispute of material fact as to whether Valley Quarries

---

[7]  See 42 Pa. C.S.A. § 5536(a).

10

et al.'s construction of the Subject Guiderail was lawful.  (Id. at 14.)  Plaintiffs also argue that the

Statute of Repose was reset during the 2019–2022 Paving Project when Valley Quarries et al.

allegedly took possession or control of the guiderail to perform "roadway repairs and also doing

visual inspections and/or surveys of damaged or defective segments of guiderail in and around

the location of the accident."  (Id. at 15–16.)

### 3. Whether Defendants Valley Quarries et al. are Entitled to Summary Judgment on Basis of Statute of Repose

As stated supra, the party seeking protection under the Statute of Repose must show that:

(1) it is an improvement to real property; (2) more than twelve (12) years have elapsed between

the completion of the improvements to the real estate and the injury; and (3) the activity of the

moving party must be within the class protected by the statute.  See Noll by Noll, 643 A.2d at 84.

All parties agree that the Subject Guiderail is an improvement to real property,[8] but Plaintiffs

claim that the term "lawfully" in conjunction with an improvement to real property has multiple

interpretations.  (Doc. No. 56 at 14.)

To be "lawful," construction must merely be authorized under the laws of the

Commonwealth of Pennsylvania, regardless of whether there were violations of federal, state, or

local law during the construction.  See Johnson v. Toll Brothers, Inc., 302 A.3d 1231, 1236–37

(Pa. Super. Ct. 2023) (holding that, even if there were code violations when constructing a

building, the construction is still lawful because it was authorized).  In Johnson, the Pennsylvania

Superior Court found that even if a party violated the applicable building code during

construction, the construction was still considered "lawful" for purposes of the Statute of Repose

---

[8] "[A] civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property . . . ."  42 Pa. C.S.A. § 5536(a).

if the party was authorized under the laws of the Commonwealth.  See Johnson, 302 A.3d at 1236.  The phrase "authorized under the laws of the Commonwealth" means a contractor is properly licensed at the time of construction.  See id. at 1236–37.  Because the parties in the instant case do not dispute that Valley Quarries et al. were licensed at the time of construction and were hired by PennDOT (an authorized government agency of the Commonwealth of Pennsylvania), the improvement of real property by Valley Quarries et al. was lawful.  Therefore, the Statute of Repose applies and would appear to bar Plaintiffs' claims against Valley Quarries et al.

However, the Statute of Repose "shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant or otherwise . . . ."  See 42 Pa. C.S.A. § 5536(b)(2).  Based on this exception, Plaintiffs argue that Valley Quarries et al.'s involvement in PennDOT's 2019–2022 paving preservation project tolls the Statute of Repose.  However, the Court is unpersuaded that Valley Quarries et al.'s repairs on the paving preservation project satisfy the exception to the Statute of Repose.  The Pennsylvania Supreme Court has held that a Statute of Repose "generally may not be tolled, even in case of extraordinary circumstances beyond a plaintiff's control."  See Venema v. Moser Builders, Inc., 284 A.3d 208, 213 (Pa. 2022) (quoting Dubose v. Quinlan, 173 A.3d 634, 644–45 (Pa. 2017)).  In Fetterhoff v. Fetterhoff, 512 A.2d 30, (Pa. Super. Ct. 1986), the Pennsylvania Superior Court held that a possessory interest is required for the exception under 42 Pa. C.S.A. § 5336(b)(2) to apply.  See Fetterhoff, 512 A.2d at 32 (stating that possession is evident from the phrase "as owner, tenant, or otherwise").  "The control of which the [S]tatute speaks is a possessory interest which carries with it the duty to maintain."  Fetterhoff, 512 A.2d at 32; see also Rabatin v. Allied Grove Corp., 24 A.3d 388, 394 (Pa. Super. Ct. 2011) (finding that the Statute of Repose did not apply when there was no

evidence to establish that a party had possessory interests in the real estate at issue).  In Rabatin, the Pennsylvania Superior Court rejected the plaintiff's argument that the Statute of Repose applied to a defendant who later repaired the real property.  See Rabatin, 24 A.3d at 393. Further, the Superior Court in Rabatin elaborated on that court's holding in Fetterhoff, indicating that an "otherwise" type entity under the Statute of Repose[9] must still have an ownership interest in the real property.  See id.  Therefore, a defendant who has conducted repairs, but does not have a possessory interest in the real property, does not qualify for the exception under the Statute of Repose.  See id.

Based on the undisputed facts of record, Valley Quarries et al. did not retain sufficient control or an ownership interest ("possessory interest") between 2019 and 2022 to trigger the applicability of the Statute of Repose exception.  While Valley Quarries et al. were present at the worksite of the 2019–2022 Paving Project, Michael Keiser testified that Valley Quarries et al. were only present between 2019 and 2021 for the purposes of inspecting guiderails.  See (Doc. No. 61-2 at 2, Tr. 125:20–126:18) (Michael Keiser deposition).  Valley Quarries et al. started guiderail repairs in 2021.[10]  (Id.)  Therefore, Plaintiffs' claims against Defendants Valley Quarries et al. are barred by the Statute of Repose as a matter of law because they were filed over twelve (12) years after completion of the Subject Guiderail's lawful construction and the facts of record do not support the application of an exception to the Statute of Repose.  Accordingly, the

---

[9]  See 42 Pa. C.S.A. § 5536(b)(2) (". . . by any person in actual possession or control, as owner, tenant or otherwise").

[10]  Plaintiffs' accident occurred in February 2020, prior to Valley Quarries et al.'s 2021 repairs. See supra.

Court will grant Defendant Valley Quarries et al.'s motion for summary judgment as to all claims (Counts I, III, and IV of the Second Amended Complaint) asserted against them.

Further, because the Statute of Repose bars Plaintiffs' claims against Defendants Valley Quarries et al. as a matter of law, Defendant PennDOT cannot be held vicariously liable for Valley Quarries et al.'s alleged negligent actions during installation and thus, Count II[11] of the Second Amended Complaint is similarly barred as a matter of law.

### B.   Defendant PennDOT's Motion for Summary Judgment

As discussed supra, the Court will grant Defendant PennDOT's motion for summary judgment as to Plaintiffs' claim of vicarious liability for the alleged negligence of Defendants Valley Quarries et al.  (Count II).  As to the remaining counts in Plaintiffs' Second Amended Complaint (Counts I, III, and IV), Defendant PennDOT argues that Plaintiffs' claims are barred by the doctrine of sovereign immunity and that Plaintiffs fail to proffer evidence supporting elements of its claims against Defendant PennDOT.  In response, Plaintiffs claim that

---

[11] Count II of Plaintiffs' Second Amended Complaint alleges as follows:

> To the extent that Defendant PennDOT did not contract with Defendants [Valley Quarries et al. to install, inspect, and/or maintain the Subject Guardrail, then all of the negligent acts complained of supra were performed by employees of PennDOT, who were working within the scope of their employment for PennDOT, and for the benefit of PennDOT, at the time of the negligent acts.  Defendant PennDOT is vicariously liable for all of the negligent acts herein complained of.

> To the extent that Defendant PennDOT did contract with Defendants [Valley Quarries et al. to install, inspect, and/or maintain the Subject Guardrail, AND Defendant PennDOT was in fact an employer of Defendants [Valley Quarries et al. with legal right of control over Defendants [Valley Quarries et al.], then Defendant PennDOT is vicariously liable for the negligent acts of Defendants [Valley Quarries et al.].

(Doc. No. 23 ¶¶ 50–51.)

PennDOT's motion for summary judgment is premature.  The Court addresses the issue of prematurity <u>infra</u>.

### 1.    Legal Standard

The United States Court of Appeals for the Third Circuit ("Third Circuit") stated that "it is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'"  <u>See</u> <u>Doe v. Abington Friends Sch.</u>, 480 F.3d 252, 257 (3d Cir. 2007) (quoting <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 139 (3d Cir. 1988).  "This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record."  <u>Id.</u>  A motion for summary judgment is decided on the basis of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."  <u>See</u> Fed. R. Civ. P. 56(c).

If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion. <u>See</u> <u>Miller v. Beneficial Mgmt. Corp.</u>, 977 F.2d 834, 845–46 (3d Cir. 1992).  Federal Rule of Civil Procedure 56(d) is a "procedural vehicle that parties may use in some cases when a party has moved for summary judgment but the non-moving party is unable to respond because it has been unable to take necessary discovery."  <u>See</u> <u>Walter v. Travelers Pers. Ins. Co.</u>, No. 12-cv-00346, 2016 WL 6962620, at *8 (M.D. Pa. Nov. 29, 2016).  The rule provides:

> d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

See Fed. R. Civ. P. 56(d).

### 2.    Arguments of the Parties

In its brief in support of its motion, PennDOT argues that it did not fail in its duty "to assemble, install, maintain, and inspect" the Subject Guiderail.  See (Doc. No. 59 at 15) (quoting Doc. No. 23 ¶ 44).  PennDOT states that

> For the purposes of this motion only, PennDOT focuses its argument on the elements of duty and breach and accepts the Plaintiffs' allegations concerning causation and damages as alleged; however, if this matter proceeds to trial, Pennsylvania law requires Plaintiffs to prove the existence of causation through expert testimony to be entitled to recovery for the injuries identified.  Lattanze v. Silverstrini, 448 A.2d 605, 608 (Pa. Super. Ct. 1982).

(Id. at 16–17.)   PennDOT argues that, although sovereign immunity can be waived under the real estate exception for "damages caused by dangerous guardrails affixed to Commonwealth real estate," an allegation that a guiderail is a dangerous condition only suffices to survive judgment on the pleadings.  See (id. at 16) (citing Cagey, 179 A.3d at 460, 468).

In response, Plaintiffs argue that summary judgment at this stage is improper because expert discovery is forthcoming.  (Doc. No. 62 at 15.)  Plaintiffs claim that:

> a full explanation of the design of the guiderail system, the distribution of force during the impact, and the cause of the failure of the Subject Guiderail and its support posts is the subject of expert disclosures and testimony, which are not scheduled until after this Motion is decided.  As will be established in upcoming expert discovery, the failure of the Subject Guardrail and the spearing of Plaintiffs' vehicle and lower limb is a direct result of the placement of the timber support posts within the ground.

(Id. at 10.)  Plaintiffs claim that their expert will provide "[a] full discussion of the physics behind the failure of the Subject Guiderail, the importance of the guiderail's component parts, and the extent of the danger caused by the height of the breakaway posts is best left for the engineering expert whose testimony is forthcoming."  (Id. at 15.)  Plaintiffs also maintain that they anticipate that their expert will "express opinions about the duties of PennDOT to install,

maintain, and inspect the Subject Guiderail to prevent and/or identify the dangerous condition."

(Id.)

### 3.      Whether Defendant PennDOT's Motion for Summary Judgment is Premature

Based on the case management plan filed by the parties and Plaintiffs' anticipated expert

testimony, the Court cannot resolve Defendant PennDOT's motion for summary judgment as to

the remaining counts at this time.  Pursuant to the joint proposed case management plan (Doc.

No. 54), submitted by Defendant PennDOT and Plaintiffs later adopted by the Court (Doc. No.

57), the parties agreed that Defendant PennDOT's motion for summary judgment, statement of

material facts, and supporting brief would be filed on or before October 20, 2023 (Doc. No. 54 ¶

1; Doc. No. 57 ¶ 1).  In the proposed case management plan, the parties indicated that expert

discovery would occur after the disposition of PennDOT's motion for summary judgment.  (Doc.

No. 57 ¶¶ 4–5.)  A footnote in the proposed case management plan stated that:

> Defendant PennDOT has indicated to Plaintiff that a Motion for Summary
> Judgment that does not require expert discovery will be filed. As such, the parties
> have agreed to a schedule reflecting the filing of such summary judgment with
> expert discovery occurring following the disposition of such motion if the same be
> necessary.

(Doc. No. 54 at 1 n.1.)

Based on the representation by Plaintiffs as to their expert's forthcoming testimony, the

Court finds that expert discovery is required to resolve PennDOT's motion for summary

judgment as to Counts I, III, and IV.  Here, Plaintiffs are not requesting that fact discovery be

reopened and are not seeking additional discovery outside of the agreed upon case deadlines.[12]

---

[12]  When a plaintiff seeks additional discovery prior to summary judgment, a plaintiff must
comply with Federal Rule of Civil Procedure 56(d) by "identifying 'with specificity what
particular information is sought; how, if uncovered, it would preclude summary judgment; and
why it has not previously been obtained'" via an affidavit or declaration.  See Bradley v. United

Plaintiffs' forthcoming expert discovery impacts the Court's analysis of the remaining counts of Plaintiffs' Second Amended Complaint because Plaintiffs claim that their expert will "express opinions about the duties of PennDOT to install, maintain, and inspect the Subject Guiderail to prevent and/or identify the dangerous condition." (Doc. No. 62 at 15.) First, the existence of a dangerous condition must be determined when resolving whether PennDOT is entitled to sovereign immunity. The Commonwealth of Pennsylvania generally enjoys immunity from suit unless that immunity is waived under certain circumstances as described in the Pennsylvania Sovereign Immunity Act. See 42 Pa. C.S.A. §§ 8521–22. Sovereign immunity is waived "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" in the circumstances set forth in 42 Pa. C.S.A. § 8522(b). See 42 Pa. C.S.A. 8522(a). One relevant exception includes "Commonwealth real estate, highways and sidewalks." See 42 Pa. C.S.A. § 8522(b)(4). This exception is defined as:

States, 299 F.3d 197, 206–07 (3d Cir. 2002) (quoting St. Sturan v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1314 (3d Cir. 1994)); see also Sutton v. Chanceford Township, No. 14-cv-01584, 2017 WL 4551038, at *4 (M.D. Pa. Oct. 12, 2017) (granting the plaintiff's Rule 56(d) motion to reopen discovery for a final and fixed period to ensure that the factual record "is sufficiently developed to make the summary judgment process both meaningful and fair"). However, a formal motion or declaration is not contemplated by the text of Rule 56(d). See Shelton v. Bledsoe, 775 F.3d 554, 567 (3d Cir. 2015). "Furthermore, the 2010 Amendments to the Federal Rules of Civil Procedure allow for alternatives to a formal affidavit such as "a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury." Id. citing Fed. R. Civ .P. 56 advisory committee's note (2010)). District courts usually grant properly filed requests for discovery under Rule 56(d) "as a matter of course," whether the nonmovant's response to a summary judgment motion is characterized as a motion, affidavit, or declaration. See Murphy v. Millennium Radio Grp. LLC, 650 F.3d 295, 309–10 (3d Cir. 2011) (quoting Doe, 480 F.3d at 257).

[a] dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

See id. The Court cannot resolve the issue of sovereign immunity at this stage when expert testimony on the existence of a dangerous condition is forthcoming.

Second, Count I of Plaintiffs' Second Amended Complaint asserts a claim for negligence against PennDOT, and states that it "owed a duty of care to Plaintiffs and all other drivers on Pennsylvania highways to assemble, install, maintain, and inspect the Subject Guardrail and its component parts, including the end terminal, in a lawful and safe manner." (Doc. No. 23 ¶ 44.) To prevail on a negligence claim, Plaintiffs must establish: (1) a duty owed to the plaintiff; (2) a breach of that duty by the defendant; (3) a causal connection between the defendant's breach and the resulting injury; and (4) injury suffered by the plaintiff. See Estate of Zimmerman v. Se. Pa. Transp. Auth., 168 F.3d 680, 684 (3d Cir. 1999). The occurrence of an injury does not prove negligence. See Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978). To prove the breach of a legally recognized duty or obligation of the defendant, the plaintiff must show that "the defendant's act or omission fell below the standard of care, and therefore, increased the risk of harm to the plaintiff." See Green v. Pa. Hosp., 123 A.3d 310, 316 (Pa. 2015) (citing Scampone v. Highland Park Care Ctr., LLC., 57 A.3d 582, 596 (Pa. 2012)). Here, the anticipated expert testimony will provide information relevant to the resolution of Count I at summary judgment.

Third and finally, Plaintiffs' remaining claims, Counts III and IV, cannot be resolved prior to the resolution of Count I. In Counts III and IV of Plaintiffs' Second Amended Complaint, Plaintiff Dawn Carroll asserts derivative claims against PennDOT, alleging negligent infliction of emotional distress and loss of consortium. (Doc. No. 23 ¶¶ 56–61.) Negligent

infliction of emotional distress claims address mental or emotional harm that is caused by the negligence of another.  See Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 544 (1994).  To prevail on a negligent infliction of emotional distress claim, negligence must first be established. If negligence is established, the plaintiff must then prove one of the following four theories of liability to prove a negligent infliction of emotional distress claim:

> (1) impact liability where emotional distress is accompanied by physical injury or impact; (2) zone of danger liability where emotional distress is inflicted on a plaintiff who was in close proximity of physical impact and thereby reasonably experienced a fear of physical injury; (3) bystander liability for emotional distress experienced by a plaintiff who personally witnessed an impact upon a close relative; and (4) special relationship liability premised on the breach of a preexisting contractual or fiduciary relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.

See Humphries v. Pa. State Univ., 492 F.Supp.3d 393, 409 (M.D. Pa. 2020) (applying Pennsylvania law).  In Pennsylvania, "[l]oss of consortium is an injury referring to 'the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities,' and, while remaining 'a ... distinct cause of action' for 'loss of services, society, and conjugal affection of one's spouse,' is a claim 'derivative' of a spouse's separate claim of injury."  See Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 777–78 (3d Cir. 2018) (quoting Darr Constr. Co. v. Workmen's Comp. Appeal Bd., 715 A.2d 1075, 1079–80 (Pa. 1998)).  In other words, "[o]ne who has suffered a loss of consortium has not sustained a bodily injury but rather has experienced an injury to marital expectations."  See Anchorstar v. Mack Trunks, Inc., 620 A.2d 1120, 1122 (Pa. 1993).  Because Counts III and IV are dependent on findings related to Count I (as derivative claims), the Court cannot resolve these counts at this time.

In sum, the Court finds that expert discovery is required to resolve PennDOT's motion for summary judgment as to the remaining counts of Plaintiffs' Second Amended Complaint.

On that basis, the Court finds that PennDOT's motion for summary judgment as to Counts I, III, and IV is premature, and will therefore deny it without to PennDOT's ability to refile the motion after the completion of expert discovery.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants Valley Quarries et al.'s motion for summary judgment (Doc. No. 49).  The Court will largely deny Defendant PennDOT's motion for summary judgment (Doc. No. 58) without prejudice but will grant Defendant PennDOT's motion as to Count II of Plaintiffs' Second Amended Complaint.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania